**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

MARY JEAN McNEAL, d/b/a JC
PHOTO TAGS,

       Plaintiff,

vs.

SDG MACERICH PROPERTIES, L.P.,
MACERICH MANAGEMENT
COMPANY, and ESTHER CARTER,

       Defendants.

No. C 07-4015-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING THE
PARTIES' MOTIONS IN LIMINE**

_____

**TABLE OF CONTENTS**

*I.*  *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*  *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   *A.*  *Rule 104* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   *B.*  *The Defendants' Motion In Limine* . . . . . . . . . . . . . . . . . . . . . . . 6
      *1.*  *The evidence at issue* . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      *2.*  *The allegedly phony signature* . . . . . . . . . . . . . . . . . . . . 6
         *a.*  *Arguments of the parties* . . . . . . . . . . . . . . . . . . . 7
         *b.*  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      *3.*  *Evidence from a subsequent investigation* . . . . . . . . . . . . 13
         *a.*  *Arguments of the parties* . . . . . . . . . . . . . . . . . . . 13
         *b.*  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
      *4.*  *Evidence that the McNeals previously sought retail space in
         the Mall* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
         *a.*  *Arguments of the parties* . . . . . . . . . . . . . . . . . . . 20
         *b.*  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
      *5.*  *Evidence of future profits of McNeal's business* . . . . . . . . 23

           *a.*      *Arguments of the parties* . . . . . . . . . . . . . . . . . . . 23
           *b.*      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
  *C.  The Plaintiff's Motion In Limine* . . . . . . . . . . . . . . . . . . . . . . . 30
      *1.*     *The evidence at issue* . . . . . . . . . . . . . . . . . . . . . . . 30
      *2.*     *Evidence of the plaintiff's husband's prior litigation* . . . . . . 30
           *a.*      *Arguments of the parties* . . . . . . . . . . . . . . . . . . . 30
           *b.*      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
      *3.*     *Evidence that the defendants filed suit first* . . . . . . . . . . . . 33
           *a.*      *Arguments of the parties* . . . . . . . . . . . . . . . . . . . 33
           *b.*      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

# I. INTRODUCTION

In a Petition filed in Iowa District Court for Woodbury County on January 15, 2007, plaintiff Mary Jean McNeal, doing business as JC Photo Tags, filed claims pursuant to Title II of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000a, 42 U.S.C. § 1985(3), and IOWA CODE § 216.7, against defendants SDG Macerich Properties, L.P., a California limited partnership, Macerich Management Company, a California corporation, and Esther Carter, an Iowa resident, arising from alleged racial discrimination in the treatment of McNeal's business in the Southern Hills Mall in Sioux City, Iowa. The defendants filed an Answer and Counterclaim (refiled as docket no. 5) for breach of contract on February 8, 2007, then removed this action to this federal court on February 15, 2007, based on federal question jurisdiction.

Somewhat more specifically, McNeal alleges that, in October 2005, she started a new business, known as JC Photo Tags, which sold dog tags, necklaces, key chains, other

jewelry, and personal photos with a "Jesus Died for Me" theme. McNeal sought in-line retail space for this business in the Southern Hills Mall (the Mall), which is owned by SDG Macerich and managed by Macerich Management Company. McNeal, who is African-American, alleges that she told the on-site specialty lease manager for the Mall, Esther Carter, that she wanted a six-month lease at not more than $1,500 per month, but Carter told her that the in-line space was not available on those terms. Instead, Carter told her that a kiosk could be leased for $1,500 per month for one year. McNeal, therefore, entered into a one-year lease for a kiosk for $1,500 per month starting on November 1, 2005. McNeal contends that she subsequently learned that the in-line space that she had originally sought was later leased to a company called Bear Country, owned by Caucasians, on a six-month lease for $1,500 per month, in other words, on the terms that she had been denied.

McNeal alleges that Carter thereafter racially discriminated against her and harassed her employees, many of whom were Native American and African American, by telling McNeal that she needed to "hire more white faces"; by harassing Native American and African American employees for not opening the kiosk on time or for leaving the kiosk unattended, but never harassing a Caucasian employee of JC Photo Tags in this way; and by "writing up" JC Photo Tags for alleged lease rules violations, such as not opening on time and leaving the kiosk unattended, when businesses owned by Caucasians were not subjected to such harassment. McNeal alleges that, in April 2006, Carter verbally accosted an African American employee of JC Photo Tags for leaving the kiosk unattended, and an argument ensued, which led McNeal and her husband to decide to close the business rather than be subjected to further racial harassment

McNeal filed a complaint with the Iowa Civil Rights Commission in October 2006 and eventually received a "right-to-sue" letter dated January 4, 2007. She then filed her

Petition in state court initiating this lawsuit on January 15, 2007, asserting claims of racial discrimination in public accommodations pursuant to state and federal law. In her Petition, McNeal seeks compensatory and punitive damages, attorney fees and expenses, and demands a jury trial on all of her claims.

The defendants filed their Answer and Counterclaim in state court on February 8, 2007, and then removed this action to this federal court on February 15, 2007. In their Answer and Counterclaim, in addition to denying McNeal's claims and asserting various affirmative defenses, the defendants allege that McNeal was liable for the rental payments on her kiosk through the end of her one-year lease term. The defendants allege that after McNeal closed her business at the Mall, SDG and McNeal entered into a written Letter Agreement effective May 22, 2006, that provided for the termination of McNeal's lease, that did not require McNeal to continue making monthly payments, but that did require McNeal to pay SDG the sum of $7,000 on or before July 30, 2006, to satisfy her outstanding obligation under the Specialty Lease Agreement. The defendants allege that McNeal failed to pay the required sum by July 30, 2006. Therefore, SDG seeks damages for breach of the Letter Agreement. SDG demands a jury trial on its counterclaim.

By order (docket no. 18) dated June 12, 2008, the court granted McNeal's unresisted motion to dismiss without prejudice her claim pursuant to 42 U.S.C. § 1985(3). That order left McNeal's claims of racial discrimination pursuant to Title II of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000a, and IOWA CODE § 216.7. Trial on McNeal's remaining claims and the defendants' counterclaim is set to begin on July 8, 2008.

In anticipation of trial, both McNeal and the defendants have filed motions in limine. *See* Defendants' June 9, 2008, Motion In Limine (docket no. 17); Plaintiff's June 16, 2008, Motion In Limine (docket no. 19). The motions in limine were duly resisted,

*see* Plaintiff's June 18, 2008, Resistance To Defendants' Motion In Limine (docket no. 20); Defendants' June 23, 2008, Resistance To Plaintiff's Motion In Limine (docket no. 22), and the defendants filed a Reply (docket no. 23) on June 23, 2008, in further support of their Motion In Limine. [Although the defendants requested oral arguments on both motions in limine, the court's crowded schedule has not permitted the timely scheduling of such oral arguments. Nor does the court find that the issues presented in either of the motions in limine are such that oral arguments are required. Therefore, the court will enter its ruling on the parties' motions in limine based upon their written submissions.]

## II.  LEGAL ANALYSIS
### A.  Rule 104

As a preliminary matter, the court notes that Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." FED. R. EVID. 104. Such preliminary questions may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met. *See id.*, Advisory Committee Notes, 1972 Proposed Rule. This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED. R. EVID. 102. The court concludes that preliminary determination of the admissibility of evidence presented or challenged in the parties' evidentiary motions will likely serve the ends of a fair and expeditious presentation of issues to the jury. Therefore, the court turns to consideration, in turn, of the admissibility of the evidence put at issue in the parties' pretrial evidentiary motions.

### B. The Defendants' Motion In Limine

#### 1. The evidence at issue

The defendants seek to exclude any testimony, offer, argument, or comment, concerning the following six categories of evidence: (1) any reference to McNeal's allegation that the signature on one of the originals of the lease that she entered into with defendant SDG Macerich Properties, L.P., for a kiosk space at the Mall is not, in fact, her signature; (2) any reference to or the admission into evidence of memoranda authored by Karen Mackey of the Sioux City Human Rights Commission and Connie Anstey of the Sioux City, Iowa, City Attorney's office and twelve photographs taken by Mackey on December 14, 2006, approximately eight months after McNeal closed her business in the Mall; (3) any reference to emotional distress of anyone other than Mary Jean McNeal; (4) any reference to whether Mary Jean McNeal or any of the McNeals sought or were offered any rental space in the Mall in 2004; (5) any reference to future profits allegedly lost by McNeal's JC Photo Tags business; and (6) any reference to settlement discussions or settlement offers that have been made by or between the parties relative to the issues raised in this lawsuit. McNeal does not resist exclusion of the evidence in categories (3) and (6), but does resist exclusion of the other categories of evidence. Therefore, the court will grant the defendants' motion as to the evidence in categories (3) and (6), but will consider in more detail the admissibility of the disputed categories of evidence.

#### 2. The allegedly phony signature

First, the defendants seek to exclude any reference to McNeal's allegation that the signature on one of the originals of the lease she entered into with defendant SDG Macerich Properties, L.P., for a kiosk space at the Mall is not, in fact, her signature. McNeal contends that such evidence is admissible.

### a.    *Arguments of the parties*

The defendants assert that McNeal claims that she only executed two originals of the lease, but that they believe that she actually executed three originals. The defendants dispute any insinuation that someone in their organization signed McNeal's name to the third original. The defendants point out that McNeal does not deny that she signed two of the originals and does not dispute the terms of the lease, nor do the parties contend that any of the terms of the three purported originals are different. Thus, the defendants contend that evidence of a dispute about the genuineness of McNeal's signature on one of the originals should be excluded pursuant to Rule 403, because any probative value such evidence may have is outweighed by its potential for prejudice. They also argue that such evidence should be excluded because of its potential to divert the parties and the jury into a collateral issue and to mislead or confuse the jury about the importance of the signature issue in the case.

In her resistance, McNeal argues that the defendants submitted the copy of the lease with the disputed signature to the Sioux City Human Rights Commission, but that she has denied under oath that it bears her signature, while Esther Carter has asserted in deposition that only McNeal could have signed the lease. McNeal contends that the evidence that the signature is not hers—as even a casual comparison of it to her signature on the other originals will show—calls into question Carter's credibility, which is a central issue in the case. McNeal asserts that impeachment on a collateral matter can be admitted when it goes to a party's credibility.

In reply, the defendants argue that there is no visual dissimilarity among the signatures on the three purported originals and that McNeal offers no expert testimony to corroborate her contention that the disputed signature is not hers. The defendants also argue that such a collateral matter can only be used for impeachment if it has some proper

purpose independent of contradiction or impeachment of Carter. Evidence undermining the general credibility of a witness, the defendants contend, is limited to matters that bear on bias, peculiar skills, or relevant knowledge, which this evidence does not.

### b.    Analysis

Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Rue 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority" and that "[e]vidence which is not relevant is not admissible." FED. R. EVID. 402. Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403.

The Eighth Circuit Court of Appeals has recently explained "prejudice" within the meaning of Rule 403 as follows:

> Under Rule 403, district courts have broad discretion to assess unfair prejudice, and are reversed only for an abuse of discretion. *United States v. Henderson*, 416 F.3d 686, 693 (8th Cir. 2005), *cert. denied*, 546 U.S. 1175, 126 S. Ct. 1343, 164 L. Ed. 2d 57 (2006). Rule 403 "does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against

> evidence that is unfairly prejudicial, that is, if it tends to
> suggest decision on an improper basis." *Wade v. Haynes*, 663
> F.2d 778, 783 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*,
> 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983).

*United States v. Myers*, 503 F.3d 676, 681 (8th Cir. 2007); *United States v. Farrington*, 499 F.3d 854, 858-59 (8th Cir. 2007). The Advisory Committee Notes to Rule 403 explain that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007) (quoting this note); *United States v. Dierling*, 131 F.3d 722, 730-31 (8th Cir. 1997) (considering whether evidence was unfairly prejudicial, because it might lead to a decision on an improper basis, where it purportedly had no connection to the charged offense and revealed grisly or violent behavior that made the defendant appear "dangerous"). Unfairly prejudicial evidence has also been described as evidence that is "'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.'" *United States v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005) (quoting *United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir. 1995)). The Advisory Committee's Notes to Rule 403 also explain that a determination on unfair prejudice should include consideration of the possible effectiveness or lack of effectiveness of a limiting instruction. FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Hawthorne*, 235 F.3d 400, 404 (8th Cir. 2000) (finding that relevance of evidence was not outweighed by any potential prejudice within the meaning of either Rule 404(b) or Rule 403 where the evidence was used for a limited purpose and the district court gave a limiting instruction).

Rule 403 also permits exclusion of relevant evidence on the basis of its potential for confusion of the issues. FED. R. EVID. 403. The Eighth Circuit Court of Appeals has explained, "'Confusion of the issues warrants exclusion of relevant evidence if admission

of the evidence would lead to litigation of collateral issues.'" *Fireman's Fund Ins. Co. v. Thien*, 63 F.3d 754, 758 (8th Cir. 1995) (quoting *United States v. Dennis*, 625 F.2d 782, 796-97 (8th Cir. 1980)).

Here, McNeal contends that the evidence of the phony signature is relevant, because it impeaches Carter's credibility, where Carter has testified that the signature is McNeal's, but McNeal has contradicted that assertion. The Eighth Circuit Court of Appeals has observed, "'It is elementary that a witness may be impeached by contradictory evidence.'" *Batiste-Davis v, Lincare, Inc.*, 526 F.3d 377, 381 (8th Cir. 2008) (quoting *Henninger v. S. Pac. Co.*, 250 Cal.App.2d 872, 59 Cal. Rptr. 76, 79 (Cal. App.1967)). Nevertheless, that is hardly the end of the matter. As the Eighth Circuit Court of Appeals has also explained,

> While impeachment by contradiction is a well-recognized way of attacking a witness's credibility, contradiction offered through the testimony of another witness is customarily excluded unless it is independently relevant or admissible. *See* MUELLER & KIRKPATRICK, MODERN EVIDENCE §§ 6.58, 6.62 (1995). As the Seventh Circuit stated in *United States v. Kozinski,* 16 F.3d 795, 806 (1994), "one may not contradict for the sake of contradiction" by proffering testimony that relates only to collateral matters.

*United States v. Scott*, 243 F.3d 1103, 1108 (8th Cir. 2001). The phony signature evidence does nothing to prove or disprove any element of any claim—where there is no dispute about the terms of the lease or whether McNeal signed at least one copy of it—and, as such, that evidence is not independently relevant. *See* FED. R. EVID. 401 ("relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it

would be without the evidence"). Thus, this evidence relates only to a collateral matter, and its admissibility is doubtful. *Scott*, 243 F.3d at 1108.

Moreover, here, McNeal is seeking to offer the phony signature evidence as a specific instance of conduct by Carter for the purpose of attacking Carter's credibility and truthfulness. Therefore, the court finds that the admissibility of the phony signature evidence also implicates Rule 608(b) concerning evidence of character and conduct of a witness. That Rule provides, in pertinent part, as follows:

> **(b) Specific instances of conduct.** *Specific instances* of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in rule 609, *may not be proved by extrinsic evidence*. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, *be inquired into* on cross-examination of the witness . . . concerning the witness' character for truthfulness or untruthfulness. . . .

Fed. R. Evid. 608(b) (emphasis added). The focus of Rule 608 is an attack on a witness's general character. *See United States v. Bolzer*, 367 F.3d 1032, 1039 (8th Cir. 2004). More specifically, "Rule 608(b) applies when a party attempts to introduce evidence of prior conduct of a witness that standing alone tends to attack or support the witness's general character for truthfulness." *Id.* at 1038.

In *Bolzer*, the Eighth Circuit Court of Appeals held that the trial court properly excluded evidence from a court employee that a government agent had used profanity to describe a federal judge during a conversation with the court employee offered to impeach the agent's testimony that he had not used profanity and, thus, to impeach his general credibility. *Id.* The appellate court concluded that Rule 608 plainly barred using the testimony of the court employee for purposes of establishing that the government agent was

generally a dishonest person or that he had a character for untruthfulness. *Id.* Similarly, here, *evidence* that Carter asserts that a signature is genuine when McNeal asserts that it is not, offered for the purpose of showing that Carter is a dishonest person or not generally credible, is barred by Rule 608. Therefore, evidence of the specific instance of the allegedly phony signature is inadmissible pursuant to Rule 608. *Id.*

Even if evidence of the allegedly phony signature were otherwise admissible, however, the court would exclude that evidence pursuant to Rule 403. In the court's view, the phony signature evidence has relatively little probative value on the issue of Carter's credibility, and no probative value on any other issue in the case. Even if it had more probative value, the court would still exclude such evidence pursuant to Rule 403, because it has considerable potential for confusion of the issues. FED. R. EVID. 403 (even relevant evidence may be exluded if its probative value is outweighed, *inter alia*, by its potential for confusion of the issues). Specifically, such evidence would very likely lead to litigation of collateral issues concerning the genuineness of the signature and who might have placed a phony signature on a third original of a lease for which there are already two acknowledged originals, when those issues have nothing to do with the merits of McNeal's racial discrimination claims. *Thien*, 63 F.3d at 758 ("confusion of the issues" within the meaning of Rule 403 means that admission of the evidence would lead to litigation of collateral issues).

The court also finds that *inquiry* into this matter on cross-examination, even if characterized as an inquiry "concerning the witness' character for truthfulness or untruthfulness," should be barred. *See* FED. R. EVID. 608 (specific instances of conduct "may . . . , in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . concerning the witness' character for truthfulness or untruthfulness. . . ."). Again, the inquiry could produce only confusion

of the issues by diverting the attention of the jurors from relevant issues to collateral issues concerning the genuineness of the signature and who might have placed a phony signature on a third original of the lease.

Therefore, that part of the defendants' Motion In Limine seeking to exclude any reference to McNeal's allegation that the signature on one of the originals of the lease that she entered into with defendant SDG Macerich Properties, L.P., for a kiosk space at the Mall is not, in fact, her signature will be granted.

### 3. *Evidence from a subsequent investigation*

Next, the defendants seek to exclude any reference to or the admission into evidence of memoranda authored by Karen Mackey of the Sioux City Human Rights Commission, and Connie Anstey of the Sioux City, Iowa, City Attorney's office, and twelve photographs taken by Mackey on December 14, 2006, approximately eight months after McNeal closed her business in the Southern Hills Mall. McNeal asserts that such evidence should be admitted.

### a. *Arguments of the parties*

The defendants note that McNeal has alleged that Carter "wrote up" or harassed McNeal and her employees for alleged lease rules violations, such as not opening on time and leaving the JC Photo Tags kiosk unattended, when businesses owned by Caucasians were not subjected to such harassment. The defendants assert that, in December 2006, approximately eight months after McNeal ceased doing business at the Mall, Karen Mackey, the Executive Director of the Sioux City Human Rights Commission, and Connie Anstey, an attorney with the City Attorney's Office for the City of Sioux City, came to the Mall and noted where certain businesses were not open or were open but no employees were present and took twelve photographs of those businesses. The defendants predict that McNeal will try to offer testimony and evidence from this "investigation" as evidence that

other businesses were engaged in the same alleged violation of lease rules with which Carter accused McNeal and her employees. The defendants argue that such evidence is irrelevant under Rule 402, because it was collected on one date eight months removed from the events at issue in this case, so that it is not probative of whether McNeal's business was being accused of lease rules violations because of her race. Even if this evidence is somehow relevant and probative, the defendants contend that it should be excluded pursuant to Rule 403 as unfairly prejudicial and likely to confuse the issues and mislead the jury. The defendants point out that McNeal admits that she did not even know that security reports had been logged on the dates that her business failed to open on time, and she was never assessed a penalty for those violations of the terms of her lease as permitted by the lease.

McNeal argues that this evidence is admissible, because the defendants intend to present evidence that JC Photo Tags was "written up" on a continuing basis for failure to open on time and for failure to have the cart attended during regular business hours. She also argues that she will, herself, testify that Carter repeatedly called her to complain that the cart was not open or was unattended. McNeal argues that the evidence provided by Mackey and Anstey will demonstrate that numerous businesses owned by Caucasians were not open at the required time or were unattended. She argues that such evidence will assist her to show that she was subjected to hostile conduct and harassment that Caucasian store owners were not. She also argues that, under the burden-shifting analysis applicable to her public accommodation claims, this evidence should also be admissible to demonstrate that any asserted business justification for the defendants' conduct is pretextual.

In reply, the defendants argue that McNeal is proceeding on the erroneous assumption that the defendants intend to offer evidence that she was continually "written up" for failing to open on time or leaving her kiosk unattended. The defendants contend

that they have never "written up" McNeal for such lease rules violations or asserted that she was "written up," although the defendants have produced computerized entries from mall security corroborating days that her business did not open on time. Thus, they contend that the evidence is irrelevant or relates only to a collateral matter. They reiterate that the supposed investigation was many months after McNeal closed her business, and there is no evidence that Carter ever issued or created any "write up" for McNeal's mall rules infractions or otherwise disciplined her for failing to follow the rules.

### b.    Analysis

The defendants cite one case in support of this part of their Motion In Limine, *Fortune Funding, L.L.C. v. Ceridian Corp.*, 368 F.3d 985, 990 (8th Cir. 2004). In *Fortune Funding*, the trial court excluded evidence of the condition of a glass curtain wall from 1997 to 2000 offered to demonstrate that, in 1985, the opposing party had falsely represented the glass curtain wall's condition, reasoning that such evidence was too remote to be relevant to the condition of the wall in 1985 and was confusing and potentially misleading to the jury. 368 F.3d at 990. The Eighth Circuit Court of Appeals affirmed, finding that the condition of the wall twelve to fifteen years after the events at issue in the case had little, if any, probative value without comparative evidence of the wall's condition in 1985, so that evidence of the wall in 1997-2000, "standing alone, is obviously too remote." *Id.* The appellate court also rejected the appellant's argument that the evidence was admissible to contradict the opposing party's interrogatory answers concerning the comparative condition of the wall in 1985 and 2000, because the court found that this argument did not substantially increase the probative value of the evidence. *Id.*

The evidence at issue here is distinguishable from that presented in *Fortune Funding*. If "remoteness" is the test of relevance and probative value of evidence of subsequent conditions to demonstrate conditions at the time of the events at issue, as

*Fortune Funding* suggests, then a lapse of eight months is nothing like the lapse of twelve to fifteen years at issue in *Fortune Funding*. *Compare id.* Moreover, evidence that a mall manager has continued to tolerate conduct by Caucasian business owners that was purportedly the basis for repeated complaints to an African American business owner—where the mall manager is the same person and the mall rules have not changed in the interim—has some probative value as to the genuineness of the mall manager's contention that her complaints to the African American business owner were motivated by legitimate business concerns and may also have some probative value to show that the African American business owner was subjected to conduct to which business owners of another race were not. Obviously, the more remote in time the comparison evidence is from the events at issue in the case, the less probative value it has, *cf. id.*, but here, the evidence of subsequent conditions is not so remote that the court should exclude the evidence on that basis alone. Rather, at least in this case, the court finds that the temporal closeness or remoteness of the evidence would be a matter going to the weight of the evidence and, hence, would be a matter for the jury to decide. Thus, the court will not exclude the evidence pursuant to Rules 401 and 402 simply because of its supposed "remoteness."

Another problem with this evidence under Rules 401 and 402, however, is that, at least as characterized so far, it provides an incomplete comparison to McNeal's circumstances. *Cf. Fortune Funding*, 368 F.3d at 990 (finding that the condition of a wall twelve to fifteen years after the events at issue in the case had little, if any, probative value without comparative evidence of the wall's condition in 1985). For example, McNeal assumes that the late-opening or unattended businesses on one date, December 14, 2006, were owned and operated by Caucasians; that these purported infractions of mall rules were recorded; that Carter or another mall managerial employee did not complain to or

discipline the business owners for those purported infractions, when she had supposedly complained to McNeal about similar circumstances; and that such infractions by the Caucasian business owners were as frequent or more frequent than the same alleged infractions by McNeal, but nevertheless were tolerated. These deficiencies, however, are all of a sort that can be addressed in examination and cross-examination of the pertinent witnesses and the presentation of other evidence to complete the picture. Thus, once again, the court finds that the extent to which the circumstances shown by the December of 2006 investigation are comparable to McNeal's circumstances before closing her business in April 2006 goes to the weight of the evidence and, hence, would be a matter for the jury to decide. Therefore, the court will not exclude the evidence of the December 2006 investigation pursuant to Rules 401 and 402 simply because the comparison is not perfect.

Nor does the court find that this evidence should be excluded pursuant to Rule 403 on a balance of probative value against potential for prejudice or confusion of the issues. Admittedly, probative value of the comparison evidence goes down as it becomes increasingly remote in time or incomplete, but the court does not find a corresponding increase in the potential for this evidence to be prejudicial, confusing, or misleading. If the evidence turns out to have little probative value, because the comparison is incomplete, then the defendants are not prejudiced by demonstrating the incompleteness of the comparison. In that case, the evidence does not encourage an improper inference by the jurors that Carter tolerated conduct by Caucasian business owners that she did not tolerate by McNeal, because it does not encourage an inference favorable to McNeal at all. *See, e.g.,* FED. R. EVID. 403, Advisory Committee Notes (explaining that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one"). The court also does not find that examination or cross-examination to establish the extent of the

comparison would be so extensive or so complicated as to cause confusion of the issues or to mislead the jury. *Id.* (probative evidence may also be excluded if it confuses the issues or misleads the jury).

The defendants contend that the visit by Mackey and Anstey was after the Iowa Civil Rights Commission had already issued a "right-to-sue" letter in this case. However, if the visit occurred on December 14, 2006, as the defendants assert, then it occurred before the Iowa Civil Rights Commission closed its file and sent McNeal a "right-to-sue" letter dated January 4, 2007. *See* Complaint, Unnumbered Second Exhibit ("right-to-sue" letter from the Iowa Civil Rights Commission dated January 4, 2007). Thus, it appears that the visit to the Mall by Mackey and Anstey may have been part of the Commission's investigation of McNeal's administrative complaint. This court observed ten years ago,

> The Eighth Circuit Court of Appeals leaves to the "sound discretion of the trial court" whether, in an employment discrimination case, to admit or exclude administrative findings, such as EEOC investigation matters. *Doss v. Frontenac,* 14 F.3d 1313, 1318 (8th Cir. 1994) (citing *Johnson v. Yellow Freight Sys., Inc.,* 734 F.2d 1304 (8th Cir.), *cert. denied,* 469 U.S. 1041, 105 S. Ct. 525, 83 L. Ed. 2d 413 (1984)); *Estes v. Dick Smith Ford, Inc.,* 856 F.2d 1097, 1105 (8th Cir. 1988) (also citing *Johnson* ); *Johnson,* 734 F.2d at 1308-10. Such findings are admissible under the hearsay exception for public records provided in FED. R. EVID. 803(8)(C), *Johnson,* 734 F.2d at 1309 (citing *Chandler v. Roudebush,* 425 U.S. 840, 863 n. 39, 96 S. Ct. 1949, 48 L. Ed. 2d 416 (1976)), but they may be excluded "'if sufficient negative factors are present.'" *Id.* (quoting Fed. R. Evid. 803(8)(C), Notes of Advisory Committee on Proposed Rules). The court must "ensure that unfair prejudice does not result from a conclusion based on a cursory EEOC review of the very facts examined in depth at trial." *Estes,* 856 F.2d at 1105.

*Phan v. Trinity Regional Hosp.*, 3 F. Supp. 2d 1014, 1017 (N.D. Iowa 1998). The principles set forth in *Phan* appear to apply with equal force to an administrative investigation of a civil rights claim involving public accommodations as they do to a complaint involving employment. Here, the court does not find that the fact of an investigation by a civil rights commission or the city attorney is irrelevant or potentially prejudicial in and of itself. More specifically, the court does not find sufficient "negative factors" in this case to warrant exclusion of the findings of the administrative investigation concerning late-opening or unattended businesses in the Mall on December 14, 2006, so long as the pertinent witnesses testify to the facts of their investigation, not to any conclusion or disposition of the administrative process. *Id.* Thus limited, the evidence of the administrative investigation will not result in unfair prejudice that might arise from a cursory review of the circumstances at the Mall on a single day, because the focus will remain on the facts concerning treatment of McNeal's business, which will be examined in depth at trial. *Id.*

Therefore, that part of the defendants' Motion In Limine seeking to exclude any reference to or the admission of evidence from an investigation of late-opening or unattended businesses at the Mall approximately eight months after McNeal closed her business will be denied.

### 4. *Evidence that the McNeals previously sought retail space in the Mall*

The penultimate category of evidence identified by the defendants in their Motion In Limine that is actually in dispute is any reference to whether Mary Jean McNeal or any of the McNeals sought or were offered any rental space in the Mall in 2004. McNeal asserts that this evidence is admissible.

### a.     *Arguments of the parties*

The defendants contend that, during discovery in this case, McNeal's husband testified that the McNeals first sought a lease for in-line space in the Mall from the defendants in 2004, the year before McNeal entered into the lease at issue in this litigation. The defendants deny McNeal's contention and state that their first contact with McNeal or anyone on her behalf was on October 18, 2005.  Therefore, the defendants contend that McNeal should be barred from presenting evidence about an alleged prior attempt to lease space in the Mall to support her claims of discrimination at trial.  The defendants argue that, even if true, testimony on this matter is irrelevant to any issue in this case and should be excluded pursuant to Rules 402 and 403, where McNeal has not alleged in her Petition or administrative charge that the defendants discriminated against her based on any purported dealings between McNeal and the defendants prior to October 2005.  The defendants also contend that, because McNeal did not file an administrative charge for any earlier events, she has not exhausted her administrative remedies as to any such allegations.  The defendants also understand Mr. McNeal's testimony to be that his banker told him that the rent that the Mall was asking for the retail space in question in 2004 was too high, so that the McNeals walked away from the deal.  Such evidence, the defendants contend, will mislead the jury, confuse the issues, and prejudice the defendants, as well as waste time and prolong the trial, if the parties are forced to litigate issues and allegations that ultimately are not relevant.

McNeal contends that this evidence should be admissible, because while Carter claims that she met with McNeal and McNeal's husband only once in October 2005, Mr. McNeal will testify that he had been to the Mall to see Carter on several occasions as far back as the fall of 2004 to inquire about leasing an in-line space and that McNeal's banker will corroborate that he recalls Mr. McNeal being in his office in late 2004 to borrow

money to start a store in the Mall and that Mr. McNeal knew how much the monthly lease payment would be, which McNeal contends is information that Mr. McNeal could only have obtained from Carter. Thus, McNeal contends that evidence that she and her husband inquired about a rental space in 2004 directly contradicts Carter's sworn testimony and is admissible for impeachment purposes. They also contend that Mr. McNeal was told that the space would lease for $1,800 per month, but a spreadsheet from 2004 obtained in discovery shows that Carter leased the small in-line space in question to a Caucasian for as little as $500 per month. Although McNeal explains that she is not seeking damages for the 2004 incident, she contends that the incident is relevant and admissible to show Carter's state of mind and motive to discriminate against McNeal in October 2005 and is also probative on the issue of whether the defendants' proffered legitimate business reasons for their actions are a pretext for discrimination, not least because of the similarity between Carter's conduct in refusing to rent space to the McNeals in 2005 on the terms they wanted, then renting the same space to the Caucasian owners of Bear Country on those terms.

In reply, the defendants contend that McNeal is trying to bootstrap an additional, unexhausted claim of race discrimination to her current claims by calling it evidence probative on the issue of pretext and the ultimate issue of race discrimination. The defendants also explain that Carter has testified that the space supposedly at issue in 2004 was leased to a sauna tub company as a storage/display window, not as a retail facility, so that a lower rental rate was justified. They reiterate their contentions that this evidence is prejudicial, confusing, and misleading, and will result in waste of time while the parties litigate collateral issues.

### b.     Analysis

As to relevance and probative value under Rules 401 and 402, contrary to the defendants' contentions, the court finds that, by analogy to employment discrimination cases, evidence of prior acts of discrimination in public accommodations by a defendant is relevant background evidence to that defendant's motive in the case before the court, even where such evidence is not extensive enough to establish discriminatory animus by itself. *See, e.g., White v. Honeywell, Inc.*, 141 F.3d 1270, 1276 (8th Cir. 1998) (employment discrimination case, citing *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1104 (8th Cir. 1988), another employment discrimination case); *Anderson v. Genuine Parts Co., Inc.*, 128 F.3d 1267, 1272 (8th Cir. 1997) (also recognizing that prior acts of discrimination by an employer are relevant evidence in discrimination actions, citing *Hawkins v. Hennepin Tech. Ctr.*, 900 F.2d 153, 155-56 (8th Cir. 1990)). If believed, such evidence could be used to determine whether the acts at issue in the present lawsuit were more likely to have occurred than not, and may indicate discriminatory animus by the common actor in the totality of the circumstances. *Id.* Evidence of past discriminatory policy and practice may also illustrate that a defendant's asserted reasons for disparate treatment are a pretext for intentional discrimination. *Anderson*, 128 F.3d at 1272 (citing *Hawkins*, 900 F.2d at 155-56). Thus, as in the employment context, this court believes that such evidence should be "'freely admitted at trial'" in a public accommodations discrimination case. *Id.* (quoting *Hawkins*, 900 F.2d at 155-56).

"Freely admitted" does not mean admitted without limitation or limiting instructions, however. There is some potential that such evidence could prejudice a defendant by leading jurors to find against the defendant for past conduct not at issue in the case or to award damages for conduct for which the plaintiff cannot now recover damages, for example, because such evidence may suggest that the defendant is a repeat

bad actor. *See, e.g.,* FED. R. EVID. 403, Advisory Committee Notes (explaining that an "improper basis" for a decision, causing prejudice, is "commonly, though not necessarily, an emotional one"). However, the evidence in question here is of a kind that the court believes is susceptible to a limiting instruction as to the proper purposes for which the evidence of prior alleged discrimination may be considered. FED. R. EVID. 403, Advisory Committee Notes (explaining that a determination on unfair prejudice should include consideration of the possible effectiveness or lack of effectiveness of a limiting instruction); *see also Hawthorne*, 235 F.3d at 404 (finding that relevance of evidence was not outweighed by any potential prejudice within the meaning of either Rule 404(b) or Rule 403 where the evidence was used for a limited purpose and the district court gave a limiting instruction). Moreover, as the Eighth Circuit Court of Appeals has explained, "When the court gives a limiting instruction, [the appellate courts] assume that the jury followed the instruction." *White*, 141 F.3d at 1278.

Therefore, that part of the defendants' Motion In Limine seeking to exclude any reference to whether Mary Jean McNeal or any of the McNeals sought or were offered any rental space in the Southern Hills Mall in 2004 will be denied.

### 5.    *Evidence of future profits of McNeal's business*

The final category of evidence identified by the defendants in their Motion In Limine that is actually in dispute is any reference to future profits allegedly lost by McNeal's JC Photo Tags business. McNeal alleges that certain evidence of "lost opportunity" damages should be admissible.

#### a.    *Arguments of the parties*

The defendants argue that any evidence of future lost profits of JC Photo Tags is inadmissible as speculative under the "new business rule," which prohibits evidence of potential profits from an unestablished business, because there is no reasonable basis for

such a damages award. The defendants argue that the "new business rule" applies here, because JC Photo Tags was an untried business that was open for a mere six months. The business sold dog tags, necklaces, key chains, other jewelry, and personal photos with a "Jesus Died for Me" theme. The defendants also point out that the only evidence for any "lost profits" that McNeal has is a projection of sales prepared by her husband, a part-time minister, in which he based the projection on the difference in the cost paid and the sale price for each product and how many items the business would sell in light of the number of churches in and around the Sioux City, Iowa, area, as well as the number of youth programs in those churches. This evidence, the defendants argue, falls far short of the sort of expert testimony required to establish future lost profits with "reasonable certainty," as required to overcome the "new business rule."

In response, McNeal concedes that she will not present evidence of profit projections for the JC Photo Tags cart business that she operated at the Mall. On the other hand, McNeal represents that she does intend to seek damages for the lost "opportunity" to open and operate an in-line store selling a full line of Christian-themed clothing. She argues that such a measure of damages is appropriate, because Carter denied her a lease on an in-line space on the terms that she requested, then gave that space to Caucasian owners of a store called Bear Country on essentially the terms that McNeal had requested. Thus, McNeal argues that, because of race discrimination, she was not able to open the store she intended to operate, which would have displayed and sold a much broader line of Christian-themed products than she could carry in her kiosk. She argues that Carter's conduct also put an end to her plan to open additional stores selling a full line of Christian-themed clothing in other malls in the Midwest. She argues that, whether calculated as a business loss or as a component of her damages for emotional distress, public humiliation, and embarrassment, she should be able to recover for her lost "opportunity" to engage in

the business of her choice. McNeal argues that she will present evidence that she and her husband spent thousands of dollars obtaining trademarks and preparing a catalog for the intended clothing line, but that money was lost because of the defendants' discrimination.

In reply, the defendants argue that however McNeal frames her damages argument, the fact is that McNeal intends to present evidence of expected lost profits from the establishment of a new business or the opportunity to establish a new business and that such profits were never realized. The defendants argue that such evidence is speculative at best and expressly prohibited by the Iowa new business rule. The defendants reiterate the Mr. McNeal is not qualified to project income for a future business.

> ### b.    Analysis

The court notes, first, that only injunctive relief is available under Title II of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000a-3 ("Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a-2 of this title, a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved. . . ."); *see also Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 50 (1st Cir. 2006) (citing *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968) (*per curiam*)). Thus, McNeal's damages claim must be pursuant to her Iowa Civil Rights Act claim, IOWA CODE § 216.7. *See* IOWA CODE § 216.15(8)(a) (defining relief from discrimination, including damages in subsection (a)(8), as follows: "Payment to the complainant of damages for an injury caused by the discriminatory or unfair practice which damages shall include but are not limited to actual damages, court costs and reasonable attorney fees.").

This court has twice considered the scope of the Iowa "new business rule." *See Doctor John's, Inc. v. City of Sioux City, Iowa*, 438 F. Supp. 2d 1005, 1038-39 (N.D.

Iowa 2006); *Hog Slat, Inc. v. Ebert*, 104 F. Supp. 2d 1112, 1119-21 (N.D. Iowa 2000). In both cases, this court explained that, under Iowa law, lost profits from a new business are generally too speculative to be recoverable. *See id.* at 1038; *Hog Slat, Inc.*, 104 F. Supp. 2d at 1120 (the "new business rule" "generally precludes recovery of the anticipated profits or revenue of new commercial enterprises because they are deemed too speculative"). In the later of these two cases, this court noted that the Iowa "new business rule" is applicable to *tort* claims, citing *Harsha v. State Savings Bank*, 346 N.W.2d 791, 797 (Iowa 1984)), but found that the rule was simply not applicable to claims of federal constitutional violations. *Id.* There are no federal constitutional claims at issue here, however. The court finds that the "new business rule" is applicable to damages claims under the "public accommodations" provisions of the Iowa Civil Rights Act, as that Act provides for "actual damages" to an injured party, *see* IOWA CODE § 216.15(8), as does a tort claim, rather than compensatory damages independent of actual injury, as does a constitutional claim. *See Doctor John's, Inc.*, 438 F. Supp. 2d at 1038 (so distinguishing "tort" damages from damages for a constitutional violation).

In the earlier of the cases in which this court considered the "new business rule" under Iowa law, *Hog Slat, Inc.*, 104 F. Supp. 2d at 1119-21, this court explained the rule in more detail, as follows:

> The rationale underlying the rule is that there is no available data of past business from which anticipated profits could be established. *Employee Benefits Plus, Inc. v. Des Moines General Hospital,* 535 N.W.2d 149, 156 (Iowa App. 1995) (citing *Harsha,* 346 N.W.2d at 797). The rule, however, is not absolute. *Id.* (citation omitted). If factual data furnishing a basis for probable loss of profits is presented, evidence of future profits may be admitted and its weight should be left to the fact-finder. *Harsha,* 346 N.W.2d at 798. Thus, the

question is whether a prospective loss of net profits has been shown with reasonable certainty.

In order to interpret the "new business rule," the Eighth Circuit Court of Appeals, in *Independent Business Forms, Inc. v. A-M Graphics, Inc.,* 127 F.3d 698 (8th Cir. 1997), sought guidance from other courts, *see e.g. Vickers v. Wichita State Univ., Wichita,* 213 Kan. 614, 518 P.2d 512 (1974) (allowing the use of established television and advertising market industry profits to form basis of lost profits estimate for new television contract), summarizing the holdings in those cases as follows:

> [T]he general rule that a new business cannot recover lost profits should not be applied when the profits of a similar, predecessor company are available to form the basis for an estimate of lost profits. When the appropriate facts and circumstances are present, even a new business may recover lost profits.

*Id.* at 704. In that case, the *Independent Business* court allowed the new manufacturing plant, Independent, to submit the issue of its earning potential—lost income and profits—to the jury based on the profits earned by its sister company, IBF, Inc. IBF, Inc. had been in business from 1986 through 1989, had earned approximately $1.7 million in sales, when its owners decided to incorporate Independent for the purpose of taking over the manufacturing operations of their original business, IBF, Inc.

In reaching its decision, the *Independent Business* court considered the close and continuous relationship between the new manufacturing plant, Independent, and its sister company, IBF, Inc., the testimony of the CPA for the two companies, and Independent's expert witness on damages, both of whom observed that, Independent's operations were a continuation, or spin-off, of IBF, Inc.'s business. Ultimately, the court concluded that Independent should have been allowed to develop and pursue its lost profits claim using IBF, Inc.'s profits to establish its own earning potential. The court, however, subsequently stated:

> We are not in a position to determine whether
> Independent could have developed sufficient evidence
> to meet the stringent requirements of proving lost
> profits. Such a question is essentially a problem of
> proof and must be decided based upon the evidence
> developed. *Handi Caddy, Inc. v. American Home
> Products Corp.*, 557 F.2d 136, 139 (8th Cir. 1977).
> For now, we simply hold the dismissal of the claim on
> summary judgment was premature and should therefore
> be reversed.
>
> *Independent Business,* 127 F.3d at 704.

*Hog Slat, Inc.*, 104 F. Supp. 2d at 1120. In *Hog Slat, Inc.*, this court also concluded that, even though it was a close question, the court would not dismiss a claim for prospective loss of net profits on a motion for partial summary judgment, because doing so would be premature, where the claimant had marshaled evidence from which reasoned comparisons could be made, thereby greatly reducing the degree of speculation in determining the claimant's lost income and profits. *Id.* at 1120.

The opposite circumstance is presented here. McNeal has failed to identify factual data furnishing a basis for probable loss of profits from which a jury could determine the weight to be given to that evidence. *Id.* (citing *Harsha,* 346 N.W.2d at 798). To put it another way, McNeal simply has not identified evidence from which the question of a prospective loss of profits can be determined with reasonable certainty. *Id.* McNeal has not identified any closely associated business, either a predecessor, as in *Independent Business*, or an analogous one, as in *Hog Slat*, from which profits of McNeal's "lost" Christian-themed clothing store could be extrapolated. Moreover, Mr. McNeal lacks the sort of expertise of the witnesses testifying to lost profits in the *Independent Business* case, *see* 127 F.3d at 704 (finding that the lost profits evidence was based on the testimony of the CPA for the two companies and Independent's expert witness on damages), and the

court finds his methodology for determining lost profits, based on the number of churches in the area and the number of youth groups that they have, to be inherently speculative. Indeed, the lost profits evidence identified here is even further removed from the circumstances in either *Independent Business* or *Hog Slat*, and thus, even more speculative, because McNeal is seeking future lost profits for a Christian-themed clothing business that she never operated at all, not just future lost profits for the kiosk business that she did operate. *See Independent Business*, 127 F.3d at 704 (the successor business, for which lost profits damages were sought, had actually operated); *Hog Slat, Inc.*, 104 F. Supp. 2d at 1120 (the claimant business had operated long enough to demonstrate that it was comparable to the comparator business). Thus, evidence of McNeal's lost profits for the business she opened or her "lost opportunity" damages for inability to open a different business is barred by the "new business rule."

Nor is the court persuaded that McNeal can "repackage" her "future lost profits" damages or "lost opportunity" damages as "emotional distress" damages. McNeal may have suffered some emotional distress, humiliation, and embarrassment from being precluded from opening a business in which she will testify that she and her husband had sunk a good deal of money in preparing to open. The measure of damages, however, is the emotional distress involved, not the amount of money expended to no purpose, if any.

Therefore, that part of the defendants' Motion In Limine seeking to exclude any reference to future profits allegedly lost by McNeal's JC Photo Tags business or McNeal's "lost opportunity" damages for inability to open a more expansive Christian-themed business in an in-line space will be granted.

### C.  The Plaintiff's Motion In Limine

#### 1.      The evidence at issue

McNeal has also filed a Motion In Limine, seeking to exclude two categories of evidence:  (1) prior litigation involving her husband; and (2) evidence that the defendants filed a small claim action against her before she filed her civil rights complaint.  The defendants resist exclusion of either category of evidence.  Therefore, the court will consider those categories of evidence in turn.

#### 2.      Evidence of the plaintiff's husband's prior litigation

##### a.      Arguments of the parties

McNeal first seeks to exclude evidence of prior litigation involving her husband. More specifically, she explains that her husband was one of the plaintiffs in a case in this court involving racial discrimination toward customers by a local restaurant.  McNeal contends that any evidence of Mr. McNeal's involvement in that prior case is irrelevant, because it does not make any fact at issue here any more or less likely to be true, so that it should be excluded pursuant to Rules 401 and 402.  She also argues that admission of any evidence concerning this prior litigation would result in unfair prejudice, waste of time, and confusion of the issues, so that the evidence should be excluded pursuant to Rule 403.  She suggests that the defendants want to offer this evidence to show that the McNeals are prone to litigation or overly sensitive to racial slights.

The defendants contend that evidence of Mr. McNeal's prior race discrimination lawsuit is probative of and admissible to show motive, intent, preparation, or plan, and is not unfairly prejudicial to McNeal.  In other words, the defendants contend that this evidence is admissible pursuant to Rule 404(b).  The defendants contend that evidence of Mr. McNeal's involvement in the prior lawsuit is admissible, because that suit also involved public accommodations and occurred less than two years before McNeal rented

her space in the Mall, so that the timing of the two lawsuits is more than coincidence. The defendants also argue that Mr. McNeal was more than a "bystander" in his wife's business and in the process to try to open that business.

### b. Analysis

The Eighth Circuit Court of Appeals recently noted that "[o]ther courts generally do not admit evidence of prior suits unless they were fraudulently filed." *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 380 (8th Cir. 2008). On the other hand, the court explained that evidence of a prior lawsuit may be admitted on a case-by-case basis, if it meets the four requirements of this Circuit's test for admissibility of such evidence under Rule 404(b). *Id.* Those four requirements are that the evidence is "'(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the [event at issue].'" *Id.* (quoting *Berry v. Oswalt,* 143 F.3d 1127, 1132 (8th Cir. 1998), in turn quoting *United States v. Aranda*, 963 F.2d 211, 215 (8th Cir. 1992)).

The court assumes that the defendants will be able to prove Mr. McNeal's involvement in the prior lawsuit by a preponderance of the evidence—indeed, the court recalls the litigation in question, because the undersigned was the presiding judge. *Id.* (second requirement). The remaining requirements, however, are not met here.

First, the court finds that Mr. McNeal's involvement in another lawsuit nominally involving "public accommodations," as does the present lawsuit, does not necessarily establish that the two lawsuits were similar in kind, even if they were relatively close in time. *Id.* (fourth element). The prior lawsuit involved refusal of a restaurant waiter to seat African American patrons in one section of a restaurant and the waiter's use of a racial epithet, not exclusion of an African American owned business from a desired rental space in a mall. *See Sherman v. Kasotakis*, 314 F. Supp. 2d 843 (N.D. Iowa 2004). Because

of the differences, the court finds that the relevance of Mr. McNeal's involvement in the prior litigation is only slightly relevant or probative of his or his wife's motive, intent, preparation, or plan in pursuing the present lawsuit. *Batiste-Davis*, 526 F.3d at 380 (first requirement is relevance). Indeed, the court finds that the defendants' inability to articulate precisely how the evidence is relevant, beyond reciting the talismanic words of Rule 404(b), is instructive on the limited relevance that the evidence has.

Yet, even if these hurdles could be surmounted, the court finds that the evidence in question should be excluded on the balance of its probative value against its potential for prejudice. *Id.* (third requirement). The court found, above, that this evidence has but slight probative value, in part because of the defendants' inability to explain how it is probative of any of the issues for which it would purportedly be offered. Moreover, as the Eighth Circuit Court of Appeals has noted, "'The charge of litigiousness is a serious one, likely to result in undue prejudice against the party charged, unless the previous claims made by the party are shown to have been fraudulent.'" *Id.* at 380-81 (quoting *Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988)). Here, Mr. McNeal's prior lawsuit was anything but fraudulent, as the jury ultimately awarded the plaintiffs damages on their claims. To the extent that the defendants want to suggest that Mr. McNeal's success on one racial discrimination claim fueled his wife's assertion of a second racial discrimination claim against different defendants and involving different circumstances, the prejudicial impact is equally apparent, as it undermines the merit of the first lawsuit, the second one, or both, on a ground that has nothing to do with the defendants' conduct or the merits of the claims at issue. *See Adams*, 401 F.3d at 900 (unfairly prejudicial evidence has also been described as evidence that is "'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial'"). Simply impugning the plaintiff's motives for bringing a racial discrimination claim does nothing

to rebut the merits of the claim, at least in the absence of prior fraudulent litigation or repeated litigation of frivolous claims reasonably suggesting improper motives for litigation.

Therefore, that part of McNeal's Motion In Limine seeking to exclude evidence of prior litigation involving her husband will be granted.

### 3. *Evidence that the defendants filed suit first*

#### a. *Arguments of the parties*

The second and last category of evidence that McNeal seeks to exclude is evidence that the defendants filed a small claim action against her before she filed her civil rights complaint. McNeal argues that this evidence should be excluded, because she timely filed her administrative charge of discrimination. She argues that the fact that the defendants' original small claim action for breach of the parties' settlement agreement for payment of remaining rent on the kiosk was filed first (and has now been incorporated into this litigation as the defendants' counterclaim) is not probative of any issue in this case and, therefore, should be excluded pursuant to Rules 401 and 402. She also argues that admission of this evidence would invite the jury to speculate as to whether the order in which the suits were filed has any bearing on the seriousness of the issues involved. Thus, she contends that the evidence of who filed suit first is confusing and unfairly prejudicial, so that it should be excluded pursuant to Rule 403.

The defendants argue that the timing of McNeal's lawsuit only *after* they filed their own claim for breach of the settlement agreement is probative of McNeal's motive and credibility in bringing this action. More specifically, they argue that the evidence is probative to demonstrate that McNeal was not even headed to the courthouse until the defendants attempted to collect the balance owing on her lease and, thus, the evidence of who filed first is probative of McNeal's subjective belief as to whether she had been the

victim of racial discrimination and harassment. They also argue that the evidence in question is simple and straight-forward, so that it will not cause unfair prejudice, confuse the issues, or mislead the jury. To summarize, the defendants contend that the evidence is probative of McNeal's motives in this lawsuit. They also argue that the court could address the matter of timing in an instruction on the procedural background to the case.

### b. Analysis

The court's analysis of the admissibility of evidence that the defendants filed suit first begins with the relevance and probative value of the evidence under Rules 401 and 402. The court doubts that the evidence has significant probative value to show that it is more or less likely that McNeal was subjected to discriminatory conduct, and only very slight probative value as to McNeal's subjective belief concerning whether or not she had suffered racial discrimination. FED. R. EVID. 401 (evidence is relevant if it tends to make a fact in issue more or less likely). There are myriad matters that parties assess when deciding whether or not to file suit that have very little to do with the merits of their claims, perhaps not least when they believe that they have suffered humiliating treatment, such as racial discrimination. Thus, the timing of claims and counterclaims really suggests little more than happenstance. *See Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 510 (1989) ("Denomination as a civil defendant or plaintiff, moreover, is often happenstance based on which party filed first or on the nature of the suit."). Thus, this evidence does little to impugn McNeal's motive in filing suit or to cast doubt on her subjective belief that she had been subjected to racial discrimination.

Even assuming that the evidence has some probative value, that probative value is outweighed by its potential for confusion of the issues and misleading the jury, if not its potential for unfair prejudice. *See* FED. R. EVID. 403 (relevant evidence may be excluded if its probative value is outweighed by its potential for unfair prejudice, confusion of the

issues, or misleading the jury). It would be improper for jurors to decide claims based on which ones were filed first, because such decision-making would not be based on the evidence demonstrating the merits or lack thereof of the claims, and the defendants appear to want to invite the jurors to respond emotionally to the timing of the claims by asserting that the later filing of McNeal's claim is somehow indicative of her subjective belief in the merits of her claims. *See, e.g.,* FED. R. EVID. 403, Advisory Committee Notes (explaining that an "improper basis" for a decision, causing prejudice, is "commonly, though not necessarily, an emotional one"). Certainly, such an *argument* about the timing of the claims is potentially unfairly prejudicial. Such an argument would also open the door to confusion of the issues and misleading the jurors, because the parties would then have to litigate the reasons for the timing of the two lawsuits rather than their merits. Such distractions are unilluminating and unnecessary.

Some of the potential prejudice of the mere fact of the timing of the parties' lawsuits could likely be mitigated by an instruction that which claim was filed first is no indication of the relative merits of the claims; rather, claims, in whatever order they were filed, must be determined on their individual merits, and the court will so instruct the jurors simply because this case involves both claims and an apparently-later-filed counterclaim. FED. R. EVID. 403, Advisory Committee Notes (explaining that a determination on unfair prejudice should include consideration of the possible effectiveness or lack of effectiveness of a limiting instruction); *see also Hawthorne*, 235 F.3d at 404 (finding that relevance of evidence was not outweighed by any potential prejudice within the meaning of either Rule 404(b) or Rule 403 where the evidence was used for a limited purpose and the district court gave a limiting instruction). Such an instruction would make it unnecessary for the parties to make any reference to the relative timing of the filing of their claims.

35

Therefore, that part of McNeal's Motion In Limine seeking to exclude evidence that the defendants filed a small claim action against her before she filed her civil rights complaint will be granted. Nevertheless, because a counterclaim is also at issue in this case, the court will instruct the jurors that which claim was filed first is no indication of the relative merits of the claims; rather, claims, in whatever order they were filed, must be determined on their individual merits. This instruction will obviate the need for any further evidence or mention of the order in which the parties' claims were filed.

### III. CONCLUSION

Upon the foregoing,

1. The defendants' June 9, 2008, Motion In Limine (docket no. 17) is **granted in part and denied in part**, as follows:

   a. That part of the defendants' Motion In Limine seeking to exclude any reference to McNeal's allegation that the signature on one of the originals of the lease she entered into with defendant SDG Macerich Properties, L.P., for a kiosk space at the Mall is not, in fact, her signature is **granted**;

   b. That part of the defendants' Motion In Limine seeking to exclude any reference to or the admission into evidence of memoranda authored by Karen Mackey of the Sioux City Human Rights Commission and Connie Anstey of the Sioux City, Iowa, City Attorney's office and twelve photographs taken by Mackey on December 14, 2006, approximately eight months after McNeal closed her business in the Mall, is **denied**;

   c. That part of the defendants' Motion In Limine seeking to exclude any reference to emotional distress of anyone other than Mary Jean McNeal is **granted**;

d. That part of the defendants' Motion In Limine seeking to exclude any reference to whether Mary Jean McNeal or any of the McNeals sought or were offered any rental space in the Mall in 2004 is **denied**;

e. That part of the defendants' Motion In Limine seeking to exclude any reference to future profits allegedly lost by McNeal's JC Photo Tags business or McNeal's "lost opportunity" damages for inability to open a more expansive Christian-themed business in an in-line space is **granted**; and

f. That part of the defendants' Motion In Limine seeking to exclude any reference to settlement discussions or settlement offers that have been made by or between the parties relative to the issues raised in this lawsuit is **granted**.

2. The plaintiff's June 16, 2008, Motion In Limine (docket no. 19) is **granted**, as follows:

a. That part of the plaintiff's Motion In Limine seeking to exclude evidence of prior litigation involving her husband is **granted**; and

b. That part of the plaintiff's Motion In Limine seeking to exclude evidence that the defendants filed a small claim action against her before she filed her civil rights complaint is **granted**; nevertheless, because a counterclaim is also at issue in this case, the court will instruct the jurors that which claim was filed first is no indication of the relative merits of the claims; rather, claims, in whatever order they were filed, must be determined on their individual merits, which

instruction obviates the need for any further evidence or mention of the order in which the parties' claims were filed.

**IT IS SO ORDERED.**

**DATED** this 1st day of July, 2008.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA